UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-00467 (RWR) |
| | ) | |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A STAY OF PROCEEDINGS

Defendant Federal Motor Carrier Safety Administration ("FMCSA") has moved to stay the processing of a Freedom of Information Act ("FOIA") request submitted by Plaintiff Advocates for Highway and Auto Safety ("Advocates") in October 2006. The request was for records related to FMCSA's activities to develop and implement a program to evaluate Mexico-domiciled motor carriers that would be permitted to operate beyond the United States-Mexico border.

Defendant does not dispute that Plaintiff's request is legally entitled to processing under FOIA. However, despite FOIA's 20-day statutory deadline for responding to requests, and despite the over-seven months that have passed since Advocates submitted its request, FMCSA has requested an additional two years to process the request.

Defendant has failed to make the showing necessary for the Court to permit it a stay of the proceedings in this case. Accordingly, the Court should deny FMCSA's motion, and order FMCSA to complete the processing of Plaintiff's request within 30 days. Should the Court

grant FMCSA a longer period to process Advocates' request, however, Advocates respectfully asks that the Court order Defendant to make interim releases of material responsive to Advocates' request every four weeks, and submit periodic reports to the Court on its progress toward completion of the processing of the request.

## BACKGROUND

### 1.    Mexico-Domiciled Trucks Operating in the United States

Since 1982, Mexico-domiciled motor carriers in the United States have been allowed to operate only within a narrow strip along the southern borders of the four southwestern states contiguous with Mexico.  *See* The Bus Regulatory Reform Act of 1982,  Pub. L. No. 97-261, § 6(g), 96 Stat. 1102 (Sept. 20, 1982).  In December 1992, Canada, Mexico, and the United States ratified the North American Free Trade Agreement (NAFTA), *see* Pub. L. No. 103-182, 107 Stat. 2057 (Dec. 8, 1993), which obligates the countries to grant reciprocal authority to the motor carriers of the other two nations to operate throughout each country on the same terms and conditions as domestic-based motor carriers.  In 1995, the President postponed implementation of NAFTA's cross-border interstate trucking privileges for Mexico-domiciled motor carriers. *See* Memorandum for the Secretary of Transportation [and] the United States Trade Representative, 60 Fed. Reg. 12393 (March 2, 1995).

In February 2001, the United States stated it would allow Mexico-domiciled motor carriers to operate beyond the border commercial zones by January 2002.  In the Department of Transportation ("DOT") appropriations bill passed later that year, however, Congress imposed numerous highly specific safety requirements and processes with which FMCSA had to comply before permitting any Mexico-domiciled motor carrier to operate beyond the border zones.  *See*

Department of Transportation and Related Agencies Appropriations Act, 2002, Pub. L. No. 107-87, § 350, 115 Stat. 833, 864-68 (Dec. 18, 2001).  Among other provisions, Section 350 of the act requires FMCSA to perform a safety evaluation of each Mexico-domiciled motor carrier prior to granting it operating authority, conducting at least 50% of the inspections on-site in Mexico, *id*. § 350(a)(1); verify that Mexico-domiciled motor carriers have drug and alcohol testing programs consistent with United States regulations, *id*.; verify the legitimacy of commercial drivers' licenses held by drivers of Mexico-domiciled motor vehicles, *id*. § 350(a)(3); and ensure that every Mexico-domiciled motor carrier provides proof of insurance through a U.S. licensed insurance company.  *Id*. § 350(a)(8).

Section 350 also required FMCSA to promulgate various interim final rules and policies. *Id*. § 350(a)(10).  In March 2002, FMCSA promulgated three regulations that would govern the operation of Mexico-domiciled trucks beyond the border zones once Section 350's requirements were met.  *See* 67 Fed. Reg. 12702 (March 19, 2002); 67 Fed. Reg. 12758 (March 19, 2002); 67 Fed. Reg. 12776 (March 19, 2002).  Labor, safety, and environmental organizations challenged the rules as violative of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq*., and the Clean Air Act (CAA), 42 U.S.C. §§ 7401 *et seq*., due to the agency's failure to prepare an Environmental Impact Statement (EIS) and conduct a conformity determination.  On June 7, 2004, the Supreme Court held that FMCSA did not violate NEPA or the CAA.  *Dep't of Transp. v. Public Citizen*, 541 U.S. 752 (2004).  After the Supreme Court ruled, DOT, according to its website, "began working immediately with its Mexican counterparts to develop a NAFTA trucking pilot program." DOT, Cross Border Truck Safety Inspection Program Fact Sheet, www.dot.gov/affairs/cbtsip/factsheet.htm.

3

**2.      Plaintiff's FOIA Request**

Advocates is a non-profit alliance of insurance and safety organizations that promotes safety on America's roads.  Declaration of Gerald A. Donaldson (Donaldson Decl.) ¶ 1 (attached hereto).  Advocates has been concerned for years about the possibility of unimpeded, long-haul interstate transportation of freight and passengers by motor carriers domiciled in and operating out of Mexico.  In particular, Advocates is concerned that the substantial differences between the regulatory regimes of the United States and Mexico will render many vehicles and drivers from Mexico ill-prepared to meet U.S. safety requirements and to operate safely on U.S. highways.  *Id.* ¶ 2.

On October 17, 2006, having heard that FMCSA was planning to develop a pilot program to allow Mexico-domiciled motor carriers to operate beyond the border zones, Advocates sent FMCSA a FOIA request for all records regarding any "FMCSA activities to formulate, develop, evaluate, implement, or otherwise consider any effort, plan, initiative, pilot program or other program intended to evaluate any Mexico-domiciled motor carrier that would be permitted by FMCSA to operate beyond the current U.S. municipalities and commercial zones on the U.S.-Mexico border;" all records that "discuss, evaluate, consider or refer" to how such a plan or program complies with the funding restriction of Section 350; and all records that "consider, discuss, evaluate, or refer to the specific policy considerations, decisions, and actions by the FMCSA and U.S. Department of Transportation" for how such a plan or program "complies with each specific requirement set forth in" Section 350.  *See* First Coleman Decl. Exhibit 1.

By letter dated October 27, 2006, FMCSA acknowledged receipt of Advocates' request and told Advocates that it had a "slight backlog" of FOIA requests.  *See* First Coleman Decl.

Exhibit 2.  Almost two months later, after the statutory time limit to respond to the request had already passed, FMCSA informed Advocates that there would be a delay in its response and that it would contact Advocates "as soon as possible concerning the approximate number of documents that will need to be examined and the date by which we expect to complete our review."  FMCSA neither requested that Advocates limit the scope of its request nor provided a date on which Advocates could expect a determination.  *See* First Coleman Decl. Exhibit 3.

On February 23, 2007, the Secretary of Transportation announced that the United States and Mexico were beginning a cross-border trucking pilot program, and that the first trucks authorized under the program would begin traveling outside the border zones "in about sixty days."  *See* Donaldson Decl. ¶ 6.  On March 13, 2007, having still not received a substantive response to its FOIA request or even an estimate of when FMCSA expected to respond to its request, Advocates filed this lawsuit.  *See* Complaint.

**3.      Defendant's Response to this Lawsuit**

On April 9, 2007, FMCSA's counsel contacted Advocates' counsel, seeking Advocates' position on FCMSA filing a motion for an extension of time to answer the complaint.  Advocates consented to the motion.  FMCSA's counsel also asked whether Advocates would be willing to narrow the FOIA request.  Advocates' counsel responded that Advocates was particularly interested in receiving records dated after June 7, 2004–the date of the Supreme Court decision–and that FMCSA could prioritize such records in responding to the FOIA request.  In response, FCMSA's counsel stated that many of the responsive records were from before 2004.  Declaration of Adina H. Rosenbaum (Rosenbaum Decl.) ¶ 2 (attached hereto).

According to FMCSA's memorandum in support of its motion for a stay and the accompanying declaration, *see* Def. Mem. at 9-10; Second Coleman Decl. ¶ 4, on April 30, 2007, FMCSA sent Advocates a letter stating, again, that there would be a delay in responding to the request, but that FMCSA might be able to "expedite" the response if Advocates narrowed the scope of the request. Once again, FMCSA did not specify a date on which it expected to provide a determination. Second Coleman Decl. Exhibit B. Although Advocates' fax machine's history reflects transmission of the fax, Dr. Gerald Donaldson, to whom the letter was addressed, did not see the letter. Donaldson Decl. ¶ 9. In addition, although FMCSA's and Advocates' counsel had already discussed narrowing the request and had agreed that FMCSA could prioritize certain records and release them before others, FMCSA did not send a copy of the April 30 letter to Advocates' counsel or otherwise mention it to her. Rosenbaum Decl. ¶ 3. FMCSA also did not follow up with Dr. Donaldson when it did not receive a response to its letter. Donaldson Decl. ¶ 9.

In early May, FMCSA's counsel once again sought Advocates' position on FMCSA's motion for an extension of time. Once again, Advocates consented to the motion. Rosenbaum Decl. ¶ 4. FCMSA's counsel did not mention the April 30 letter to Advocates' counsel nor did she ask again whether Advocates would be willing to narrow its request. *Id.* ¶ 3. Nonetheless, on May 24, 2007, FMCSA moved for a 2-year stay.

**4.     Developments Regarding Defendant's Pilot Program**

On April 23, 2007, environmental, safety, and labor organizations sued FMCSA, claiming that establishment of the pilot program would violate notice-and-comment requirements imposed by federal law. *See Sierra Club v. U.S. Dep't of Transp.*, No. 07-2210 (N.D. Cal.). The

6

following week, FMCSA filed a notice requesting comments on the pilot program. *See* 72 Fed.

Reg. 23883 (May 1, 2007).  Comments were due May 31, 2007.  *Id*.  Although FMCSA still has

not released to Advocates any of the records regarding the pilot program requested in the October

2006 FOIA request, and therefore Advocates could not review all of the records pertinent to the

program, Advocates filed comments by the due date.  Donaldson Decl. ¶ 11.  In its comments, it

requested an extension to the public comment period until after FMCSA has responded to its

FOIA request.  *Id*.  The Chairman of the U.S. House of Representatives' Committee on

Transportation and Infrastructure and the Chairman of the House Subcommittee on Highways

and Transit, who have also requested records related to the pilot program from DOT and have not

received them, have also requested that the comment period remain open until after FMCSA

responds to Advocates' FOIA request.  *Id*. ¶ 15.

On May 25, 2007, President Bush signed into law a supplemental appropriations act, The

U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability

Appropriations Act, 2007, Pub. L. No. 110-28, 121 Stat. 112, which permits DOT funds to be

expended to authorize Mexico-domiciled trucks to operate beyond the border zones only if that

authority is first tested in a pilot program that complies with Section 350.  The Act also requires

the Secretary to publish in the Federal Register, and provide notice and an opportunity to

comment on, various data and information, including comprehensive data and information on

pre-authorization safety audits, specific standards to be used to evaluate the pilot program, and a

list and analysis of federal laws and regulations for which the Mexican counterparts will be

deemed equivalent.  *Id*. § 6901.  Based on the provisions in the supplemental appropriations act,

Advocates expects that there will be additional opportunities in the near future for it to comment

on FMCSA's pilot program.  Donaldson Decl. ¶ 12.  Receipt of the records it requested in

October 2006 would allow Advocates to provide more informed comments.  *Id.* ¶ 13.  In

addition, there is currently pending legislation on cross-border trucking.  *See* H.R. 1773, the Safe

American Roads Act.  Receipt of the requested records would enable Advocates to better

educate the public and Congress about the pending legislation.  Donaldson Decl. ¶ 14.

## ARGUMENT

FOIA requires agencies to substantively reply to requests within 20 working days.  5

U.S.C. § 552(a)(6)(A)(i).  However, an agency may obtain a stay of proceedings under FOIA "if

[it] can show exceptional circumstances exist and that the agency is exercising due diligence in

responding to the request."  5 U.S.C. § 552(a)(6)(C)(i).  In *Open America v. Watergate Special*

*Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), the D.C. Circuit construed that provision to

allow a stay when an agency is deluged with an unanticipated volume of requests, the existing

resources are inadequate to deal with the requests, and the agency can show it is exercising due

diligence in processing the requests.  *Id.* at 616.

In 1996, however, Congress concluded that agencies had relied "upon overly broad

dictum in [*Open America*], . . . to obtain judicial approval for lengthy delays whenever they have

a backlog," and that "[b]acklogs of requests for records under FOIA should not give agencies an

automatic excuse to ignore the time limits."  H. Rep. 795, 104th Cong., 2d Sess. 14 (1996).  It

therefore amended FOIA to make clear that "'exceptional circumstances' does not include a

delay that results from a predictable agency workload of requests under this section, unless the

agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C.

§ 552(a)(6)(C)(ii).  Thus, as this Court recently explained, an *Open America* stay may be granted

8

(1) when an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; *and* (3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4) the agency shows 'reasonable progress' in reducing its backlog of requests.

*Elec. Frontier Found. v. DOJ*, 2007 WL 1334973, at *7 (D.D.C. May 7, 2007) (quotation marks and citations omitted).

Here, FMCSA contends that it requires a stay because of the size of Advocates' request and because of the agency's backlog of FOIA requests. Although Advocates has already been reasonable and has agreed to prioritize its receipt of some records over others, to expedite the processing of its request, it is willing to narrow its request both by date and topic. In addition, FMCSA's backlog is the type of predictable backlog that does not justify a stay, and Advocates has a compelling need for the requested records. Accordingly, FMCSA's motion for a stay should be denied.

**A.    The Size of Advocates' Request Does Not Justify A Stay.**

FMCSA's primary argument for a two-year stay does not focus on any of the factors set forth in the test above. Instead, it claims that "given the expansiveness of the Request, it would be unreasonable to expect FMCSA to have provided responsive records to [Advocates] within twenty or even thirty business days of its receipt of the Request." Def. Mem. at 16. It emphasizes that "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing the request . . . after being given an opportunity to do so . . . shall be considered as a factor in determining whether exceptional circumstances exist," 5 U.S.C. § 552(a)(6)(C)(iii), and states that Advocates has refused to narrow its request. Def. Mem. at 4, 13.

The question at this point is not whether FMCSA could respond to Advocates' request in "twenty or even thirty business days." Def. Mem. at 16. Both of those deadlines have long since passed. FMCSA has already had over seven months to respond to plaintiff's FOIA request, and the question now is whether is should be given more than three times that long again to provide Advocates with the records its requested in 2006.

Moreover, FMCSA's claim that Advocates has refused to narrow its request rests on a letter FMCSA sent Advocates on April 30, 2007. The letter did not specify that Advocates needed to narrow its request if it wanted to receive the records within the next two years; instead, it stated that if Advocates focused on a narrower time-frame or specific program, FMCSA "may be able to expedite the process." Second Coleman Decl. Exhibit B. Dr. Donaldson, to whom the letter was addressed, did not see the letter, and FMCSA did not follow-up with Advocates, either by phone or letter, when it did not receive a response. Donaldson Decl. ¶ 9. Furthermore, although Advocates' attorney and FMCSA's attorney had already discussed narrowing the scope of the request, FMCSA did not send a copy of the letter to Advocates' attorney nor did FMCSA's attorney ever mention the letter to her. Rosenbaum Decl. ¶ 3. Under these circumstances, the April 30, 2007, letter should not be used as a factor to demonstrate exceptional circumstances.

Advocates' attorney and FMCSA's attorney had a conversation about narrowing the request on April 9, 2007. In that conversation, Advocates' attorney told FMCSA's attorney that Advocates was willing to prioritize records dated after June 7, 2004 and would be willing to receive those records before records dated prior to June 7, 2004. She also informed FMCSA's attorney that, after it received records dated after June 7, 2004, Advocates might be willing to

narrow its request.  FMCSA's attorney responded that many of the responsive records were dated

before 2004.  Rosenbaum Decl. ¶ 2.

Advocates has been reasonable in agreeing to extensions of time for FMCSA to answer

the complaint and in agreeing to prioritize some records before others and receive them at

different times.  However, for the sake of expediting this case, it agrees to narrow its request to

records dated on or after June 7, 2004, the date the Supreme Court decided *Department of*

*Transportation v. Public Citizen*, 541 U.S. 752, after which, according to DOT, the agency

"began working immediately with its Mexican counterparts to develop a NAFTA trucking pilot

program."  Donaldson Decl. ¶ 3.  Advocates further agrees to narrow its request to records

related to the pilot program (also sometimes referred to as a demonstration project) announced by

the Secretary in February 2007 (which is the same program that is the subject of the May 1, 2007,

Federal Register notice).  The number of records dated after June 7, 2004, that relate to the

particular pilot program/demonstration project at issue should be significantly below the 448,000

records FMCSA claims are responsive to the request.[1]

**B.**     **FMCSA's Backlog of Requests Does Not Justify A Stay.**

FMCSA also claims that its "significant backlog" of FOIA requests and limited staffing

support a stay.  FMCSA's backlog, however, is exactly the routine, predictable backlog that

FOIA specifies cannot constitute exceptional circumstances.  *See* 5 U.S.C. § 552(a)(6)(C)(ii).

---

[1]In its memorandum, FMCSA claims that Advocates seeks records "from December 2001 through October 2006."  Def. Mem. at 3.  However, Advocates' request did not have an end-date, and the date of the request is not a reasonable cut-off date for responsive records.  *See Public Citizen v. Dep't of State*, 276 F.3d 634, 642-44 (D.C. Cir. 2002); *McGehee v. CIA*, 697 F.2d 1095, 1103-04 (D.C. Cir. 1983).  Given that Advocates' FOIA request has been pending for over seven months, Advocates should not have to file additional FOIA requests to receive records dated after October 2006.

FMCSA's claim of a significant backlog rests on the fact that it has received approximately 526 complex requests so far this fiscal year, and that the number of complex requests it has received has increased in the last three years. Def. Mem. at 14. However, "an agency must show more than a great number of requests to establish[] exceptional circumstances under the FOIA." *Leadership Conference on Civil Rights v. Gonzales*, 404 F.Supp.2d 246, 259 n.4 (D.D.C. 2005). The agency must also demonstrate that the number of FOIA requests it received was unanticipated. Here, the agency does not claim that it has received an unanticipated number of requests. To the contrary, it notes that it "expects that the number of 'complex' FOIA requests . . . will increase again for fiscal year 2007." Def. Mem. at 14; *see also* Second Coleman Decl. ¶ 2 ("I project the number to increase again for Fiscal Year 2007"). An "expect[ed]" number of requests cannot justify a stay. *See* 5 U.S.C. § 552(a)(6)(C)(ii).

Moreover, FMCSA has not demonstrated the "reasonable progress in reducing its backlog of pending requests" that FOIA requires. *Id*. Rather, FMCSA's backlog has increased steadily over the past three years, from 91 pending requests at the end of fiscal year 2004, to 97 at the end of fiscal year 2005, to 148 at the end of fiscal year 2006. Rosenbaum Decl. ¶¶ 6-8. Further, although FMCSA now claims that it "will procure commercial litigation support services" to process Advocates' FOIA request, Second Coleman Decl. ¶ 6; Def. Mem. at 4, it has not done so in the seven months in which the request has been pending so far. And although FMCSA claims it adopted a two-track system for processing requests in February, 2007, Second Coleman Decl. ¶ 3, after Advocates' request had already been pending for months, and contends that two-track

process satisfies the "due diligence" requirement, Def. Mem. at 15, FMCSA has not shown how the adoption of that process will help reduce its backlog of complex requests.[2]

In short, FMCSA's delay "results from a predictable agency workload of requests," 5 U.S.C. § 552(a)(6)(C)(ii), and the agency has demonstrated no progress in reducing its backlog. Accordingly, its backlog of requests does not justify a stay.

## C.     Plaintiff Has an Urgent Need for the Requested Records.

Finally, an *Open America* stay "is not appropriate where the request is necessary and urgent." *Jimenez v. FBI*, 938 F.Supp. 21, 31 (D.D.C. 1996); *see Edmond v. U.S. Attorney*, 959 F.Supp. 1, 3 (D.D.C. 1997) (same); *see also Open America*, 547 F.2d at 616; 5 U.S.C. § 552(a)(6)(E)(i)(I) (providing for the expedited processing of records "in cases in which the person requesting the records demonstrates a compelling need").  Advocates did not request expedited processing of its FOIA request in the request itself, because at the time it filed its FOIA request, in October 2006, FMCSA had not yet even announced that it was going to be conducting a pilot program to allow Mexico-domiciled trucks to operate beyond the border zones.  Plaintiff had no compelling need for Defendant to respond to its FOIA request in a time faster than the 20 business days required by the statute, or even faster than the 30 business days that was the median amount of time for the agency to respond to complex FOIA requests in fiscal year 2006. And given that FMCSA had a median response time of 30 days for complex requests, and

---

[2]FMCSA also claims that "several 'complex' requests remain ahead of Plaintiff's request in the queue." Def. Mem. at 4. This assertion is surprising given that, in fiscal year 2006, it took FMCSA a median of 30 days to respond to complex FOIA requests, Rosenbaum Decl. ¶ 6, which demonstrates that it takes fewer than 30 days for a complex request to reach the front of the queue.  Moreover, in the letter it sent Advocates in October 2006, FMCSA claimed to have only a "slight backlog" of requests.  First Coleman Decl. Exhibit 2.

therefore, assumedly, its queue was less than 30 days long, there was no need for Advocates to seek to jump the queue.

In the many months since Advocates sent FMCSA its FOIA request, however, FMCSA has announced a pilot program allowing Mexico-domiciled trucks to operate in the United States beyond the border zones; been sued over its failure to provide notice and a chance to comment on that pilot program; finally given notice and comment; and closed its comment period.   In addition, during that period, both the U.S. Senate Committee on Appropriations Subcommittee on Transportation, Housing and Urban Development, and Related Agencies, and the U.S. House of Representatives Committee on Transportation and Infrastructure Subcommittee on Highways and Transit have held hearings on cross-border trucking.  And Congress has passed, and the President has signed, a bill requiring additional notices in the Federal Register and additional opportunities to comment.

Advocates promotes safety on American highways and serves as a resource for Congress, the Administration, the media, and the public on highway and auto safety issues.  There is an urgency for Advocates to inform the public, Congress, and FMCSA itself about looming safety issues related to the pilot program FMCSA wants to implement.  *See* 5 U.S.C. § 552(a)(6)(E)(i)(I).  Cross-border trucking is important to the public and a subject of current news coverage.  *See* Rosenbaum Decl. ¶ 5.  There is pending legislation on the pilot program and Advocates expects that there will be an additional opportunity to comment on the program. Donaldson Decl. ¶¶ 12, 14.  FMCSA's failure to respond to Advocates' FOIA request has already stymied Advocates' ability to provide information about the safety issues related to the pilot program.  *Id*. ¶¶ 7, 11.  Advocates should not have to wait an additional two years–until a time

14

when FMCSA will likely have closed all its comment periods and implemented its pilot program –to receive the records it requested before the pilot program was even announced. FMCSA should be ordered to release the records to allow Advocates to more fully participate in and advance the public debate over cross-border trucking and to inform the public of the implications of Mexico-domiciled long-haul trucking operations in the United States. *See Leadership Conference on Civil Rights*, 404 F.Supp.2d at 260 (D.D.C. 2005) (denying stay and granting expedition where "[p]laintiff's FOIA requests could have a vital impact on development of the substantive record in favor of re-authorizing or making permanent the special provisions of the Voting Rights Act"); *ACLU v. U.S. Dep't of Justice*, 321 F.Supp. 2d 24, 29 (D.D.C. 2004) (granting expedition in light of "concerns which are of immediate public interest in view of the ongoing debate regarding the renewal and/or amendment of the Patriot Act").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for a stay and require FMCSA to process Advocates' FOIA request within thirty days. Should the Court grant FMCSA a longer period of time to respond, Plaintiff respectfully asks that the Court order FMCSA to make interim releases of documents responsive to Plaintiff's request every four weeks and submit periodic reports to the Court on its progress toward completing the processing of Plaintiff's FOIA request.

Respectfully submitted,

/s/
Adina H. Rosenbaum
(DC Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009

15

(202) 588-1000
(202) 588-7795 (fax)

Dated: June 4, 2007                    Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2007, I caused a copy of the foregoing memorandum to be served by the Court's Electronic Case Filing (ECF) system, which sent notification to the following counsel for Defendant:

Robin M. Meriweather

/s/

Adina H. Rosenbaum

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-00467 (RWR) |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF GERALD A. DONALDSON

I, Gerald A. Donaldson, declare as follows:

1.     I am the Senior Research Director of Advocates for Highway and Auto Safety ("Advocates").  Advocates is an alliance of consumer, health, and safety groups, insurance companies, and insurance agents' organizations working together to make America's roads safer. Advocates encourages the adoption of federal and state laws, policies, and programs that save lives and reduce injuries. It serves as a resource for Congress, the Administration, the media, and the public on highway and auto safety issues.

2.     Advocates has been concerned for years about the possibility of unimpeded, long-haul interstate transportation of freight and passengers by motor carriers domiciled in and operating out of Mexico.  In particular, Advocates is concerned that the substantial differences between the regulatory regimes of the United States and Mexico will render many vehicles and drivers from Mexico ill-prepared to meet U.S. safety requirements and to operate safely on U.S. highways.

3.      According to the Department of Transportation's ("DOT") website, after the

Supreme Court decision in *Department of Transportation v. Public Citizen*, DOT "began

working immediately with its Mexican counterparts to develop a NAFTA trucking pilot

program." DOT, Cross Border Truck Safety Inspection Program Fact Sheet,

www.dot.gov/affairs/cbtsip/factsheet.htm (last visited May 31, 2007).

4.      In the Fall of 2006, I heard that the Federal Motor Carrier Safety Administration

("FMCSA") was considering a pilot program to allow Mexico-domiciled trucks to operate

outside of the border commercial zones.

5.      On October 16, 2006, on behalf of Advocates, I submitted a Freedom of

Information Act to FMCSA for records related to any plan or program to evaluate Mexico-

domiciled motor carriers that would be permitted to operate beyond the border zones.  On March

13, 2007, having not received a substantive response from FMCSA or a date on which FMCSA

planned to provide a substantive response, Advocates filed this lawsuit.

6.      On February 23, 2007, the Secretary of Transportation announced that the United

States and Mexico were beginning a cross-border trucking pilot program.  She stated that the first

trucks to be authorized under the pilot program would begin operating outside the border zones

"in about 60 days."  The Secretary's statement is available on DOTs website, at

www.dot.gov/affairs/cbtsip/peters022307.htm.

7.      On March 8, 2007, the U.S. Senate Committee on Appropriations Subcommittee

on Transportation, Housing and Urban Development, and Related Agencies, held a hearing on

opening the Southern border to interstate truck commerce throughout the United States.  On

March 13, 2007, the U.S. House of Representatives Committee on Transportation and

2

Infrastructure Subcommittee on Highways and Transit held a hearing on "U.S./Mexico Trucking: Safety and the Cross Border Demonstration Project." Advocates' Vice-President testified at that hearing without benefit of the records responsive to the October 2006 FOIA request.

8.      In Section 350 of the Fiscal Year 2002 Department of Transportation and Related Agencies Appropriations Act of 2002, Congress imposed numerous highly specific safety requirements and processes with which FMCSA must comply before permitting any Mexico-domiciled motor carrier to operate beyond the border zones. In addition to setting preconditions for the operation of Mexico-domiciled trucks beyond the border zones, Section 350 gives the Department of Transportation Inspector General (IG) an important oversight role in verifying that certain of these preconditions are met. In his testimony before the Senate subcommittee on March 8, 2007, the IG stated that "additional improvements are needed in two of the eight Section 350(c) criteria subject to OIG review." *See* Testimony of Calvin L. Scovel, III, Inspector General, U.S. Department of Transportation, before the United States Committee on Appropriations Subcommittee on Transportation, Housing and Urban Development, and Related Agencies (March 8, 2007), available at http://appropriations.senate.gov/hearings.cfm. Similarly, in its January 2005 audit, the IG's office could not verify that DOT had reached full compliance with Section 350's requirements. *See* OIG, DOT, *Follow-Up Audit of the Implementation of the North American Free Trade Agreement's (NAFTA) Cross Border Trucking Provisions*, available at http://www.oig.dot.gov/StreamFile?file=/data/pdfdocs/mh2005032.pdf. The IG's office has not yet submitted its audit for 2007.

9.      In her declaration dated May 23, 2007, Tiffanie Coleman states that she sent Advocates a letter on April 30, 2007, inviting Advocates to narrow its FOIA request. Although my fax machine's history reflects transmission of the fax, I did not see that letter. Neither Ms.

Coleman nor any other representative from FMCSA further contacted me to discuss narrowing the request.

10.    On May 1, 2007, FMCSA filed a notice in the Federal Register requesting comment on its pilot program. The notice stated that comments were due May 31, 2007.

11.    Although Advocates had not yet received any records responsive to its October 16, 2006, FOIA request, it filed comments on FMCSA's pilot program on May 31, 2007. Because FMCSA had not responded to the FOIA request, Advocates was compelled to file its comments based on the limited information about the pilot program in FMCSA's notice, without the benefit of detailed background information and records regarding the development of the program. In its comments, Advocates requested that the notice-and-comment period be extended until after FMCSA responds to its FOIA request.

12.    Because of the provisions relating to Mexico-domiciled motor carriers in the U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act or 2007, signed by the President on May 25, 2007, I expect that there will be additional notices in the Federal Register and opportunities to comment on the pilot program. Advocates will submit comments during those public comment periods.

13.    Receipt of the records requested in the October 2006 FOIA request would help Advocates in understanding and evaluating the basis for and the critical safety elements of the pilot program. That understanding, in turn, would inform Advocates' efforts to provide public education on the implications for safety of Mexican long-haul trucking operations inside the U.S. and would enable Advocates to write informed comments by allowing Advocates to evaluate records containing specific information on: (a) the safety audits of each Mexico-domiciled motor

4

carrier applicant, including the specific criteria and records relied on by FMCSA to process each

applicant and to approve or disapprove an award of provisional U.S. interstate operating

authority; (b) the consideration of key elements of the pilot program and what factors determined

whether certain U.S. regulations would be altered or revised to accommodate Mexican-domiciled

motor carriers; (c) FMCSA's compliance with each specific requirement of Section 350 of the

Fiscal Year 2002 Department of Transportation Related Agencies Appropriations Act of 2002;

and, (d) FMCSA's compliance with each specific requirement of the statutory pilot program

provisions in 49 U.S.C. § 31315(c).

14.    There is currently pending legislation on cross-border trucking. *See* H.R. 1773.
Receipt of the requested records would enable Advocates to better educate the public and
Congress about the pending legislation.

15.    Advocates is not the only entity interested in receiving FMCSA's records relating
to plans or programs to evaluate Mexico-domiciled motor vehicles that would be allowed to
operate outside the border zones. On March 30, 2007, Representative Peter DeFazio, Chairman
of the House Committee on Transportation and Infrastructure Subcommittee on Highways and
Transit, sent a letter to Jeffrey Shane, Under Secretary for Policy at DOT, requesting records of
DOT's work on the pilot program. Instead of providing such records, Under Secretary Shane
responded to the request with a five-page letter attached to which were only two documents. On
May 25, 2007, Representative DeFazio and Representative James L. Oberstar, Chairman of the
House Committee on Transportation and Infrastructure, sent another letter to the Secretary of
Transportation requesting records related to "the Department's activities to consider, develop, or
evaluate a cross-border pilot program, demonstration project, or other initiative to allow Mexico-

5

domiciled motor carriers to operate beyond the U.S. municipalities or commercial zones along the U.S.-Mexico border." They also requested records evaluating how the records comply with the requirements of Section 350 of the FY 2002 Department of Transportation and Related Agencies Appropriations Act (Public Law 107-87). In addition, the Representatives asked that the period to comment on the Federal Register notice about the pilot program remain open until two weeks after FMCSA responds to Advocates' FOIA request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on June 4, 2007.

Gerald A. Donaldson

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civil Action No. 07-00467 (RWR) |
| | ) | |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION | ) ) | |
| | ) | |
| Defendant. | ) ) | |

DECLARATION OF ADINA H. ROSENBAUM

I, Adina H. Rosenbaum, declare as follows:

1.     I am a staff attorney at Public Citizen.  I represent Advocates for Highway and Auto Safety ("Advocates") in the above-captioned case.  I filed the complaint in the above-captioned case on March 13, 2007.

2.     On April 9, 2007, I had a conversation with Robin Meriweather, the attorney representing the Federal Motor Carrier Safety Administration ("FMCSA") in the above-captioned case.  Ms. Meriweather asked me for Advocates' position on FMCSA moving for an extension of time to file its answer.  I responded that Advocates consented to the motion.  Ms. Meriweather also asked me whether Advocates would be willing to narrow its Freedom of Information Act ("FOIA") request.  After consulting with my client, I responded that Advocates was willing to prioritize records dated after June 7, 2004.  I informed Ms. Meriweather that, after it received records dated after June 7, 2004, Advocates might be willing to narrow its request.  Ms. Meriweather seemed pleased with my response and informed me that many of the responsive records were dated before June 7, 2004.

3.      After that conversation, Ms. Meriweather and I did not discuss again the possibility of Advocates' narrowing its request.  In particular, she did not inform me that FMCSA had sent a letter to Advocates on April 30, 2007, stating that it could expedite its processing of the request if Advocates agreed to narrow the request.  I first learned about that letter when FMCSA filed its Motion for a Stay on May 24, 2007.

4.      On or around May 8, 2007, I consented again to FMCSA filing a motion for an extension of time to answer the complaint.

5.      Since Advocates filed its FOIA request in October 2006, numerous articles have been published about cross-border trucking issues.  For example, on May 22, 2007, the Washington Post published an editorial on the issue, *Special-Interest Stalling*, Wash. Post, May 22, 2007, at A14, available at http://www.washingtonpost.com/wp-dyn/content/article/2007/05/21/AR2007052101463.html.  It published a letter to the editor by Representatives James Oberstar and Peter DeFazio in response to the editorial on June 1, 2007.  *See* Letter to the Editor, James L. Oberstar and Peter A. Defazio, *It's Safety, Not Stalling*, Wash. Post, June 1, 2007, at A14, available at http://www.washingtonpost.com/wp-dyn/content/article/2007/05/31/AR2007053102003.html.  In addition, a search of news.google.com conducted on June 1, 2007, for articles from the preceding 30 days relating to cross-border trucking revealed the following articles, among many others: Matt Stearns, *Is the US Building a NAFTA super highway?*, Startribune.com, May 29, 2007, http://www.startribune.com/484/story/1213550.html;  Avery Vise, *Congress Imposes New Hurdles for Mexican Trucks*, etrucker.com, May 29, 2007, http://www.etrucker.com/apps/news/article.asp?id=60377;  Paul M. Crawzak, *Bill Could Postpone Mexican Truck Plan*, signonsandiego.com (San Diego Union Tribune), May 26, 2007, http://www.signonsandiego.

com/news/business/20070526-9999-1b26trucks.html;  Dan Caterinicchia, *Iraq Bill Restricts*

*Mexican Truck Access*, chron.com (Houston Chronicle), May 25, 2007, http://www.chron.com/

disp/story.mpl/ap/fn/4836487.html;  *Safety, Honor, and NAFTA*, Dailyprogress.com, May 18,

2007, http://www.dailyprogress.com/servlet/Satellite?pagename=CDP%2FMGArticle%2FCDP

_BasicArticle&c=MGArticle&cid=1173351245306&path=!news!opinion;  *House votes to delay*

*Bush plan opening U.S. to Mexican truckers*, journalnow.com (Winston-Salem Journal), May 16,

2007, http://www.journalnow.com/servlet/Satellite?pagename=WSJ/MGArticle/WSJ_BasicArtic

le&c= MGArticle&cid=1173351220110;  *Pilot progam will allow semis to go anywhere in US*,

Yumasun.com, May 10, 2007, http://www.yumasun.com/news/trucks_33928___article.html/

mexican_safety.html;  *Mexico truck program to happen in July, officials say*, The Trucker, May

10, 2007, http://www.thetrucker.com/News/Stories/2007/5/10/Mexicantruckprogramtohappenin

Julyofficialssay.aspx;  Sean Holstege, *Mexico's trucks to go deep into U.S.?*, Tucson Citizen,

May 10, 2007, http://www/tucsoncitizen.com/daily/local/51185.php;  Lisa J. Adams, *U.S. says*

*Mexico truck program on track*, Westfall Weekly News, May 8, 2007, http://www.newsone.ca/

westfallweeklynews/stories/index.php?action=fullnews&id=3189;  Brigham McCown, *Keep on*

*truckin'*, Star-Telegram.com, May 7, 2007, http://www.star-telegram.com/245/story/93751.html;

Tony Natale, *Program lets more trucks from Mexico into United States*, East Valley Tribune,

May 4, 2007, http://www.eastvalleytribune.com/story/89039;  *Bill would limit Mexican trucks in*

*US to 1000*, Star-Telegram.com, May 3, 2007, http://www.star-telegram.com/227/story/89565

.html;  Meena Thiruvengadam and Sean Mattson, *U.S.-Mexico trucking program still waiting*,

mysa.com (San Antonio Express), May 3, 2007, http://www.mysanantonio.com/business/stories/

MYSA050307.State.Cross_border.2cb1cb8.html.

6.    I have reviewed the Department of Transportation's ("DOT") annual FOIA reports for Fiscal Years ("FY") 2006, 2005, and 2004. According to DOT's FY 2006 annual report, available at http://www.dot.gov/foia/reports/2006annualreport.htm, in FY 2006, FMCSA received no simple requests. It received 987 complex requests, to which it had a median response time of 30 working days. At the end of the year, it had 148 pending requests. The median number of days those requests had been pending was 28.

7.    According to DOT's FY 2005 annual report, available at http://www.dot.gov/foia/reports/2005annualreport.htm, in FY 2005, FMCSA received no simple requests. It received 823 complex requests, to which it had a median response time of 31 working days. At the end of the year, it had 97 pending requests. The median number of days those requests had been pending was 17.

8.    According to DOT's FY 2004 annual report, available at http://www.dot.gov/foia/reports/2004annualreport.htm, in FY 2004, FMCSA received no simple requests. It received 778 complex requests, to which it had a median response time of 58 working days. At the end of the year, it had 91 pending requests. The median number of days those requests had been pending was 16.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on June 4, 2007.

Adina H. Rosenbaum

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-00467 (RWR) |
| | ) | |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of Defendant's Motion for a Stay of Proceedings and Plaintiff's

Memorandum in Opposition to Defendant's Motion for a Stay of Proceedings, it is hereby this

____ day of ____, 2007,

ORDERED that Defendant's Motion for a Stay of Proceeding is DENIED; and

further ORDERED that Defendant must complete processing of Plaintiff's Freedom of

Information Act request within 30 days.

_____
United States District Judge