**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 07-00467 (RWR) |
| v. | ) ) | |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION | ) ) ) ) | |
| Defendant. | ) ) ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR A STAY OF PROCEEDINGS**

**INTRODUCTION AND SUMMARY**

Defendant Federal Motor Carrier Safety Administration ("FMCSA") seeks a one-year stay of the proceedings because exceptional circumstances have prevented it from processing Advocates for Highway and Auto Safety's ("AHAS's") FOIA request within the default statutory time limits. FMCSA has a FOIA backlog due to an unexpected volume of requests and a shortage of available staff. FMCSA's FOIA Officer has submitted multiple affidavits demonstrating that the agency has made reasonable progress in reducing that backlog, and has adopted a two-track processing system which has substantially reduced average processing times for complex and simple FOIA requests. Those affidavits are accorded a presumption of good faith, which cannot be overcome by AHAS's conclusory allegation that FMCSA has not reduced its backlog. Courts have held that similarly-situated agencies face "exceptional circumstances" and are eligible for a stay pursuant to Section 552(a)(6) of FOIA. The Court should do the same here.

The scope of AHAS's FOIA request compounds the exceptional circumstances that have prevented FMCSA from processing this request within 20 business days.  AHAS seeks records concerning FMCSA's implementation of the cross-border trucking provisions agreed to in NAFTA.  The agency has been working on various aspects of implementation since 2001.  In February 2007, the Secretary of Transportation announced that FMCSA was implementing a one-year demonstration project to authorize a limited number of Mexican trucking companies to operate in the United States beyond the border commercial zones.  FMCSA published a notice and request for public comment on the project in the Federal Register May 1, 2007.  In response to recent legislation directing FMCSA to conduct the demonstration project as it would a pilot program and to publish specific details regarding the project, FMCSA released a more detailed notice on June 8, 2007, with comments due June 28, 2007.  As AHAS's request involves significant policies and projects being developed by FMCSA over a period of years, it is unsurprising that there are a vast number of potentially responsive documents.  FMCSA identified over 400,000 pages of documents potentially responsive to AHAS's October 2006 FOIA request.

Although AHAS previously refused to narrow its request, in its opposition to the stay motion AHAS announced that it would limit its request to documents dated on or after June 7, 2004 that relate to the pilot program/demonstration project.  That narrowed request is still massive, and FMCSA personnel, offices, and divisions nationwide have reported over 310,000 pages as being potentially responsive, making this larger and more complex than any FOIA request FMCSA has received in the last five years. Even an agency with a large FOIA staff would find it difficult to review and process such a huge number of documents, particularly

given the likelihood that many of the requested documents involve the agency's deliberative

process and other privileges.  AHAS's suggestion that FMCSA — a small agency with only six

people in its FOIA office — could complete that process within the next thirty days is fanciful.

Nonetheless, FMCSA will reduce the length of its requested stay from two years to one year, as

the new request involves fewer records than the original AHAS request.

AHAS has not demonstrated that it has a "compelling need" for the requested records

that is sufficient to outweigh FMCSA's need for a stay.  There is a considerable body of publicly

available information on this subject, including Congressional testimony, reports by the

Department of Transportation, and numerous records FMCSA has published on its website and

entered into the docket opened for comments on the demonstration project and the regulations

that the project implements.  Over 1,870 citizens and organizations have commented on the

project thus far, including AHAS.  Given how well informed the public already is on this

subject, the stay would not compromise any public interest in receiving the additional

information AHAS purportedly would disseminate after receiving the hundreds of thousands of

pages of records it seeks.

## <u>ARGUMENT</u>

## I.    "EXCEPTIONAL CIRCUMSTANCES" SUPPORT ENTRY OF A STAY IN THIS CASE.

This Court should stay the proceedings for one year,[1] pursuant to Section 552(a)(6) of

FOIA, to permit FMCSA to complete its processing of the AHAS FOIA Request.  Section

---

[1] FMCSA originally requested a two-year stay.  However, as the projected number of
responsive documents has decreased, FMCSA has reduced the length of its stay request.  A
proposed order reflecting that modification is submitted herewith.

552(a)(6) operates as a "safety valve," and reflects Congress' recognition that agencies should be given additional time to process a FOIA request when "exceptional circumstances" prevent the agency from responding within the statutory time lists, despite the agency's due diligence. Appleton v. FDA, 254 F. Supp. 2d 6, 9 (D.D.C. 2003). It "excus[es] any delays encountered in responding to a request as long as the agencies are making a good faith effort and exercising due diligence in processing the requests on a first-in first-out basis." Ohaegbu v. FBI, 936 F. Supp. 7, 8 (D.D.C. 1995); Kuffel v. United States Bureau of Prisons, 882 F. Supp. 1116, 1127 ((D.D.C. 1995) (same).

"Exceptional circumstances" are present in this case for two reasons. First, FMCSA has a backlog of FOIA requests which has delayed its ability to process the AHAS FOIA request despite the agency's diligent efforts to reduce that backlog. Second, the AHAS FOIA request is very broad, even in its newly "narrowed" form, and FMCSA projects that it will need to gather and review approximately three hundred sixteen thousand pages of documents in order to respond to that request. See Declaration of Tiffanie C. Coleman, dated June 28, 2007, ¶¶ 2-3 (Exh. 1 hereto) ("Fourth Coleman Decl.").

### A.      FMCSA Has A Backlog of FOIA Requests Despite Its Due Diligence

A stay is appropriate when an agency has a backlog of FOIA requests and is exercising "due diligence" to process those requests. See Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976); Ohaegbu, 936 F. Supp. at 8. Even delays that result from a "predictable agency workload" should be excused if the agency is making "reasonable progress" in reducing its backlog. 5 U.S.C. § 552(a)(6)(C)(ii). Those factors support entry of a stay in this case.

FMCSA has a backlog of FOIA requests due to the substantial increase in the number of requests it has received in recent years.  See Declaration of Tiffanie C. Coleman, dated June 14, 2007, ¶ 3 ("Third Coleman Decl.") (Exh. 2 hereto).  In Fiscal Year 2006 FMCSA received approximately 25 percent more FOIA requests than the previous fiscal year, and had a shortage of available FOIA man-hours due to staffing losses in other FMCSA offices.  See id.  That was not a "predictable" situation, notwithstanding AHAS's contrary claims.  Instead, it demonstrates that FMCSA "has been deluged with a volume of requests for information vastly in excess of that anticipated by Congress and that its existing resources are inadequate to deal with the volume of such requests within the time limits."  Electronic Frontier Found. v. Department of Justice, No. 06-1708, 2007 WL 1334973, at *6 (D.D.C. May 7, 2007) (finding exceptional circumstances present where requests increased by approximately thirty percent and agency faced unexpected decrease in staff); see also Center for Public Integrity v. Department of State, No. 05-2313, 2006 WL 1073066, at *4 (D.D.C. Apr. 24, 2006) (finding backlog "unforeseen" and not "routine" where agency received approximately fifteen percent more requests and had other information access obligations ).

FMCSA has made reasonable progress in reducing its backlog, and continues to do so. See Third Coleman Decl. ¶¶ 3-4.  This year FMCSA adopted a new two-track processing system, which already has decreased the agency's FOIA processing times.  See id. ¶ 4.  The average processing time for simple FOIA requests is now 20 business days instead of 35 business days. See id.  The average processing time for complex FOIA requests is now approximately 25 business days instead of 35 business days.  See id.  Agency staff and contractors also are working overtime hours to reduce the backlog.  See id.  As a result, FMCSA's FOIA Officer

expects that the backlog will be smaller at the end of Fiscal Year 2007.  See id.  FMCSA also is

part of the U.S. Department of Transportation FOIA Action Improvement plan.  See id. ¶ 5.

AHAS's assertion that the agency's backlog has increased in recent years,

see Opp. to Mot. For Stay at 12 (Dkt. Entry 8), ignores the fact that the total number and

complexity of FOIA requests also has grown over those years.  The backlog of FOIA requests at

the end of Fiscal Year 2004 represented 10.5 percent (or 91/869)of the total FOIA requests in

FMCSA's queue that year.[2]  See Fourth Coleman Decl. ¶ 6.  The backlog remained at 10.5

percent (or 97/920) in Fiscal Year 2005, even though the total number of FOIA requests grew by

approximately 10 percent.  See Third Coleman Decl. ¶ 3.  Thus, FMCSA processed more FOIA

requests in Fiscal Year 2005 (823 requests) than in Fiscal Year 2004 (778 requests).  Although

the backlog increased to 13 percent (or 148/1138) in Fiscal Year 2006, the total number of FOIA

requests increased by approximately 25 percent that year, and FMCSA processed approximately

20 percent more FOIA requests in Fiscal Year 2006 (990 requests) than in Fiscal Year 2005 (823

requests).  See id. ¶¶ 2-3.  FMCSA also received substantially more "complex" FOIAs in Fiscal

Year 2006, and had to overcome a reduction in FOIA man-hours.  See id. ¶ 3; Second Coleman

Decl. ¶ 2 (Exh. 2 to Dkt. Entry 7).  Given those circumstances, the fact that the backlog

increased slightly in a single year "does not negate the overall progress shown to date."  Center

for Public Integrity, 2006 WL 1073066, at *5 (granting stay and finding agency had made

reasonable progress even though backlog increased in most recent year); see generally Appleton

v. FDA, 254 F. Supp. 2d 6, 10 n. 4 (D.D.C. 2003) ("reasonable progress . . . does not require that

---

[2]FMCSA carried over 105 FOIA requests from Fiscal Year 2003, and received 764 new
FOIA requests in Fiscal Year 2004.  See Fourth Coleman Decl. ¶ 6.

annual backlog reductions be uniform"). More importantly, as noted <u>supra</u>, FMCSA expects that it will have a lower percentage of backlogged requests by the end of Fiscal Year 2007, even though the total number of FOIA requests probably will increase again. <u>See</u> Third Coleman Decl. ¶ 4.

In sum, FMCSA has implemented measures to reduce its FOIA backlog, and those efforts have begun to yield results. As part of its new FOIA process, FMCSA processes requests in a two-track system on a first-in, first-out, basis. <u>See</u> Second Coleman Decl. ¶ 4 (Exh. 2 to Dkt Entry 7). That is all it needs to establish in order to be eligible for a stay. <u>See</u> <u>Appleton</u>, 254 F. Supp. 2d at 10; <u>Electronic Frontier Found.</u>, 2007 WL 1334973, at *5-*7.

### B. The Expansiveness of the AHAS Request Supports Entry of a Stay

The size and breadth of Plaintiff's request also supports a finding that "exceptional circumstances" are present here. AHAS suggests that the breadth of its request is somehow beyond the scope of the stay analysis. <u>See</u> Opp. to Mot. for Stay at 9 (Dkt. Entry 8). However, Congress expressly included the "scope of a request" as a factor, and directed courts to consider a requester's refusal to reasonably modify the scope of its request as part of the "exceptional circumstances" analysis. 5 U.S.C. § 552(a)(6)(C)(iii). Further, courts in this Circuit frequently consider the volume of responsive documents when determining whether to stay FOIA litigation pursuant to Section 552(a)(6). <u>See, e.g.</u>, <u>Jiminez v. FBI</u>, 938 F. Supp. 21, 31 (D.D.C. 1996); <u>Ohaegbu</u>, 936 F. Supp. at 8. Indeed, it would be unrealistic to ignore the scope of a request, as that often is a key predictor of how long it will take an agency to identify, review, and release responsive documents, and whether the Court should give the agency additional time to complete that process. Further, Section 552(a)(6) would be an ineffective safety valve if it did not give

courts discretion to grant agencies additional time to respond to unmanageable and highly burdensome requests.

AHAS's novel suggestion that the Court should disregard its refusal to narrow its request because it did not read its mail or faxes has no support in the law, and should be rejected.  Courts should consider a requester's failure to narrow its request even if the agency never asked the requester to do so.  See Electronic Frontier Found., 2007 WL 1339473, at *5 n.7.  Nonetheless, FMCSA has given AHAS multiple opportunities to narrow its request.  As AHAS admits, counsel for Defendant contacted counsel for AHAS on April 9, 2007, and asked whether AHAS was willing to narrow its FOIA request.  See Declaration of Robin M. Meriweather, ¶ 3 (Exh. 3 hereto).  AHAS, through its counsel, refused to narrow its request, and stated that it wanted all the documents.  See id. ¶ 3.  Although AHAS indicated that it was most interested in documents dated after June 7, 2004, AHAS's counsel reiterated that her client was "not narrowing the request," and simply wanted those documents first.  Id. ¶¶ 3, 5.  AHAS's counsel said nothing that even hinted that AHAS would be willing to narrow its request in the future, despite AHAS's contrary allegations in its opposition memorandum.  See id. ¶ 5.  Nor did AHAS contact FMCSA to narrow its request after receiving the enlargement motions which indicated that there were over 400,000 pages of potentially responsive documents.  See Third Coleman Decl. ¶ 6; Meriweather Decl.¶ 6.

Notwithstanding AHAS's express refusal to narrow its request, FMCSA again asked AHAS to narrow its request by letter dated April 30, 2007.  That letter was sent via facsimile and mail.  See Third Coleman Decl. ¶ 6.  Given AHAS's prior refusal to narrow its response, FMCSA interpreted AHAS's silence as a reaffirmation of its prior position; it had no reason to

speculate that AHAS had failed to read the fax and the letter.  FMCSA first learned that AHAS was willing to narrow its request when it read Defendant's Opposition brief filed June 4, 2007. See id.

FMCSA appreciates AHAS's newfound willingness to reduce the scope of its FOIA request.  However, the request remains very broad, and its size continues to create "exceptional circumstances."  FMCSA has identified approximately 316,000 pages of documents potentially responsive to this FOIA request.  See Fourth Coleman Decl. ¶¶ 2-3.  Thus the AHAS FOIA request "even in its narrowed form —  is the largest, most extensive FOIA request FMCSA has ever received" during Ms. Coleman's tenure at FMCSA.  Id. ¶ 4.  Further, to the extent AHAS seeks records that postdate FMCSA's receipt of the original request — which was the end-date identified in AHAS's original request — its new request is broader than the first one.[3]  See Opp. at 11 (Dkt. Entry 8).  Given that the narrowed request is approximately 25 percent smaller than AHAS's original request, FMCSA now seeks only a one-year stay instead of a two-year stay. However, a stay remains necessary.

## II.    PLAINTIFF HAS NOT ESTABLISHED A "COMPELLING NEED" THAT OUTWEIGHS THE AGENCY'S NEED FOR A STAY.

AHAS claims that it has an "urgent need" for the requested records, and that a stay would be "inappropriate."  Opp. at 13 (Dkt. Entry 8).  Courts have denied stays when the requester

---

[3] AHAS incorrectly asserts that its original request "did not have an end-date." Opp. at 11 n. 1 (Dkt. Entry 8).  The request expressly states that it "covers the period of time from December 18, 2001, to the date of receipt of this FOIA request."  See Exh. 1 to First Coleman Decl. (Dkt. Entry 7 at Exh. A to Exh. 2); Third Coleman Decl. ¶ 2.  Accordingly, this cut-off date was selected by AHAS, not the agency.  The revised page estimates set forth in this reply and in the Third Coleman Declaration do not take into account any records created after that October 25, 2006 cut-off date.  See Fourth Coleman Decl. ¶ 2.

shows an "exceptional need or urgency" to have its request processed out of turn.  See Jiminez, 938 F. Supp. at 31.  AHAS bears the burden of demonstrating that those exigent circumstances exist.  Id.; see also Ohaegbu v. FBI, 936 F. Supp. 7, 8 (D.D.C. 1996).  That burden is heavy, and courts "rarely" conclude that a party has satisfied it.  Nation Magazine v. Department of State, 805 F. Supp. 68, 73 (D.D.C. 1996) (listing numerous situations where no exigent circumstances were found).

AHAS borrows the standards used when determining whether a plaintiff should be granted expedited processing of its FOIA request — which AHAS admits it did not request here[4] — and argues that the Court should find that AHAS has a "compelling need" for the records in order to inform the public of issues concerning cross-border trucking.  When a requesting party that is "primarily engaged in disseminating information" seeks expedited processing pursuant to Section 552(a)(6)(E)(v) of FOIA, it can establish "compelling need" by demonstrating an

---

[4] To the extent AHAS's "compelling need" argument is a request for expedited processing, it must be denied for failure to exhaust administrative remedies.  The Department of Transportation's ("DOT's") FOIA regulations provide that requests for expedited processing of a FOIA request be made to the agency.  49 C.F.R. § 7.31(c).  There is no authority for the proposition that such requests can, as an initial matter, by directed to a court.  AHAS thus must first present its expedited processing request (complete with certified statement under 49 C.F.R. 7.31(c)(3)) to FMCSA, not to the Court.  As of this date, AHAS has yet to do so.  AHAS attempts to explain away its failure to request expedition from the agency by claiming that FMCSA had not announced a Mexican truck "pilot program" at the time of its October 2006 FOIA request.  Pl.'s Opp. at 13 (Dkt. Entry 8).  In this part of its brief, however, AHAS conveniently glosses over a fact that it previously acknowledged:  the Secretary of Transportation announced on February 23 that the demonstration project was expected to commence in about 60 days.  Thus, as of February 23, AHAS was on notice that commencement of the project was anticipated in the near future.  Its response, however, was not a request for expedition to FMCSA, but the filing of this lawsuit on March 13.  AHAS has failed to exhaust its administrative remedies with respect to seeking expedited processing.  Accordingly, if its opposition is a request that the Court grant expedition, it must be rejected.

"urgency to inform the public concerning actual or alleged Federal Government activity." 5

U.S.C. § 552(a)(6)(E)(v). The legislative history of this provision makes clear that expedition is

a form of extraordinary relief: Congress explained that "[t]he specified categories for

compelling need are intended to be narrowly applied" and cautioned that "[g]iven the finite

resources generally available for fulfilling FOIA requests, unduly generous use of the expedited

processing procedure would unfairly disadvantage other requestors who do not qualify for its

treatment." H.R.Rep. No. 104-795, at 26 (1996). Congress also noted that "[t]he urgency to

inform requires that . . . the consequences of delaying a response to a FOIA request would

compromise a significant recognized interest." Id. Against this backdrop, the D.C. Circuit has

established a three-prong test for evaluating a FOIA request's need for expedited processing: (i)

Whether the request concerns a matter of current exigency to the American public; (ii) whether

the consequences of delaying a response would compromise a significant recognized interest;

and (iii) whether the request concerns Federal governmental activity. See Al Fayed v. CIA, 254

F.3d 300, 310 (D.C. Cir. 2001).

 That standard should not apply here, given that no expedited processing request has been

made to the agency. See generally Nation Magazine, 805 F. Supp. at 73 (analyzing compelling

need without considering expedited processing standards); Ohaegbu, 936 F. Supp. at 8 (same);

Lisee v. CIA, 741 F. Supp. 988, 989 (D.D.C. 1990) (same). Instead, the Court should ask

whether AHAS has established "a genuine need and reason for urgency in gaining access to

Government records ahead of prior applicants for information." Ohaegbu, 936 F. Supp. at 9. In

any event, AHAS would be unable to demonstrate a "compelling need" even if the expedited

processing standard were the proper means to assess that argument. AHAS simply has not

shown that a one-year stay would "compromise a significant recognized interest" and, therefore, has failed to establish a "compelling need" sufficient to make a stay inappropriate.

AHAS's "compelling need" arguments fail as a matter of law and fact. In its Opposition to the Defendant's stay motion, AHAS argues that in order to provide educated, fully informed, public input to FMCSA's demonstration project proposal, the public needs all of the hundreds of thousands of pages responsive to its FOIA within 30 days. In the alternative, AHAS argues that the Defendant should extend the response time to its request for public comment on its demonstration project notice for a period of 30 days after complying with AHAS's FOIA.[5] While informed public input to a proposed agency program might be a "significant recognized interest" under the second prong of Al Fayed, AHAS cites no authority, nor does any exist, for the misguided proposition that this interest can be served only by having an agency disgorge the universe of documents related to the program, many of which by the terms of the request would likely be privileged deliberative or attorney-client communications. This is true even with respect to AHAS's narrowed request, presented to the government for the first time in its Opposition, which will still yield an estimated 250,000 pages once the final count of responsive pages has been made.

The untenable nature of AHAS's expansive reading of "significant recognized interest" is demonstrated by the impact it would have on agency decision making in general. For example, every time an agency proposed a new regulation, an interested party could file a FOIA request for all agency documents, internal or otherwise, related to the subject matter of the proposed

---

[5] As it would be impossible to respond to the FOIA request in 30 days, delay of the proposed agency program would be the only viable alternative under Plaintiff's theory. Such delay may, in fact, be Plaintiff's goal.

rule, and then insist that the response to the request be expedited to ensure the requester receives the documents some time before the comment deadline for the proposed rule.  Even if the documents at issue numbered only a fraction of those at issue here, it is doubtful that an agency could respond to such a request before expiration of a typical comment period, and it would be virtually impossible to resolve contested claims of FOIA exemptions within such a time frame. Moreover, the notion that this type of request warrants expedited processing is at odds with the fundamental principles governing agency decision making based on an administrative record. Those principles dictate that the public is entitled to documents upon which the agency has based its decision and that those documents will be part of the administrative record for the agency action.  See 5 U.S.C. § 552(a)(2).  An interested party has no entitlement under the Administrative Procedure Act, or, here, under the statutes governing the demonstration project, to obtain internal agency documents that are merely related to a proposed agency action prior to the close of the comment period for the proposed action.  Because AHAS, as a matter of law, lacks any entitlement to obtaining the requested documents prior to the close of the demonstration project comment period, it cannot establish that it has any "recognized interest," much less a significant one, that would be compromised in the absence of expedited processing of its FOIA request.

AHAS's claims are further undermined by the current status of FMCSA's notice and comment procedure regarding the demonstration program and the recent history of agency actions regarding the implementation of NAFTA's trucking provisions.  As explained above, Congress has now required FMCSA to conduct the demonstration project as it would a pilot program under 49 U.S.C. § 31315(c), and has directed the agency to publish specific details of

-13-

the project.  Pub. L 110-28 § 6901(b)(2)(B); see also 49 U.S.C. § 31315(c)(5).  Pursuant to this

legislation, FMCSA has supplemented the detailed information set forth in its May 1, 2007

Federal Register notice with an even more detailed notice published on June 8, 2007, with

comments due by June 28, 2007.  See 72 F.R.31877 (2007).  The supplemental notice includes

all the information required by the recent legislation and by section 31315(c).  FMCSA has also

entered in the public docket for those notices 22 documents totaling 481 pages to further inform

the public and assist the public in providing meaningful comments on the demonstration project.[6]

The supplemental notice and the supporting materials easily satisfy the requirement of section

31315(c)(1) that the agency publish a "detailed description" of the project.  These materials are

in addition to relevant agency records already published on DOT and FMCSA web sites.[7]

Additionally, the safety issues related to the operation of Mexican trucks in the United

States have been the subject of extensive, public debate at least since the effective date of

NAFTA.  And since 2000, the safety aspects of these operations have been exhaustively

reviewed in a number of public contexts including the notice-and-comment rulemaking for the

special safety regulations applicable only to Mexican motor carriers, which constitute the

---

[6] See U.S. DOT Docket Management System (DMS) Docket Nos. FMCSA-2007-28055-1600; FMCSA-2007-28055-1601; FMCSA-2007-28055-1602; and FMCSA Docket Nos. FMCSA-2007-28055-1640 through 1658.  FMCSA Docket No. FMCSA-2007-28055-1639 contains FMCSA's listing of these 22 records.

[7] See**http://www.dot.gov/affairs/cbtsip/index.htm** (Defendant's Cross Border Truck Safety Inspection Program web site); **http://www.fmcsa.dot.gov/about/news/testimony/tst-030807.htm** (Defendant and Agency Secretary testimony before the U.S. Senate); **http://www.fmcsa.dot.gov/about/news/testimony/tst-031307.htm**.(Defendant and Agency Undersecretary testimony before the U.S. House of Representatives)

foundation of the demonstration project[8] and multiple reports by the DOT Inspector General on FMCSA's compliance with section 350 and other safety aspects of Mexican trucking.[9] Information related to these undertakings has long been available to the public in FMCSA's rulemaking dockets and on the website of DOT's Office of the Inspector General.

Finally, it is noteworthy that the lack of a response to the AHAS FOIA request has not inhibited public response to the FMCSA notices. As of June 28, 2007, over 1,870 citizens and organizations have commented[10] on the demonstration project based on information provided to the public by FMCSA.[11] The number of commenters, and the detail of some of the comments, belies AHAS's claim that the public has been stymied in responding. Indeed, among the detailed comments are those of AHAS itself, submitted on May 31, 2007 in response to FMCSA's first notice.[12] While AHAS claimed in its comments that it could not adequately respond due to the delay in processing the FOIA at issue, AHAS proceeded to submit a 22-page response, complete with itemized arguments, sub-arguments, and dozens of citations to Defendant's regulations, statutory law, FMCSA records, and agency testimony before Congress.[13]

---

[8] See 67 Fed. Reg.12702 & 12758 (Mar. 19,2002); DMS Docket Nos. FMCSA-98-3298, FMCSA-98-3299.

[9] See http://www.oig.dot.gov/item.jsp?id=1485; http://www.oig.dot.gov/item.jsp?id=1098; http://www.oig.dot.gov/item.jsp?id=824.

[10] DMS Docket No. FMCSA-2007-28055.

[11] 72 Fed. Reg. 23883 (2007); 72 Fed. Reg. 31877 (2007).

[12] See U.S. DOT Docket Management System (DMS) Docket No. FMCSA-2007-28055-1412.

[13] See n. 5 supra.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a stay should be GRANTED.

Dated: June 28, 2007                    Respectfully submitted,


                                        _____/s/_____
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney


                                        _____/s/_____
                                        RUDOLPH CONTRERAS, D.C. BAR # 434122
                                        Assistant United States Attorney


                                        _____/s/ Robin M. Meriweather_____
                                        ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                        Assistant United States Attorney
                                        555 Fourth St., N.W.
                                        Washington, D.C.  20530
                                        Phone: (202) 514-7198
                                        Fax: (202) 514-8780
                                        Robin.Meriweather2@usdoj.gov

**<u>Certificate of Service</u>**

I hereby certify that on this 28th day of June, 2007, I caused a copy of the foregoing

Reply to be served upon Plaintiff by the Court's Electronic Case Filing system or, should I

receive notice from the ECF system indicating that electronic transmission failed, to be served

by first class mail, postage prepaid addressed to:

Adina H. Rosenbaum
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009


      /s/   *Robin M. Meriweather*
Robin M. Meriweather, D.C. Bar # 490114

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY | ) ) ) ) |
| Plaintiff, | ) Civil Action No.: 07-00467 (RWR) ) |
| v. | ) ) |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION | ) ) ) |
| Defendant. | ) ) ) ) |

DECLARATION OF TIFFANIE C. COLEMAN

1. I continue to serve as the Freedom of Information Act (FOIA) Officer for the Federal Motor Carrier Safety Administration (FMCSA), an operating administration within the U.S. Department of Transportation.  I adopt and re-affirm paragraphs 1 and 2 of my earlier declaration to the court dated April 11, 2007.

2. On June 8, 2007, FMCSA contacted all of its personnel, offices, and divisions nationwide which FMCSA believed would have records responsive to Plaintiff's now-narrowed FOIA.  Pursuant to Plaintiff's now-narrowed FOIA, FMCSA instructed said personnel, offices, and divisions to now estimate a page count for their records that relate only to the FMCSA Pilot Program which is the subject of the FOIA at issue in this suit.  FMCSA

instructed said personnel, offices, and divisions to begin with records created on June 7, 2004, end with records created on October 25, 2006, and estimate the page count of all responsive records created on those dates and the timeframe in between.    Twenty three FMCSA personnel, offices, and divisions nationwide reported that they have responsive records, and they provided estimates totaling approximately 316,000 pages. The October 25, 2006, end-date for responsive records is per Plaintiff's instructions in its October 17, 2006, FOIA request letter.  In that letter (see Exhibit 1 to my Declaration dated April 11, 2007), the Plaintiff stated that its request covered "the period of time from December 18, 2001, to the date of receipt of this FOIA request."  FMCSA received Plaintiff's FOIA on October 25, 2006.  FMCSA continues to collect and sort the responsive records.

3.  The 316,000-page estimate is a raw estimate.   Due to the size of this FOIA, the underlying Pilot Program, and the diversity of the reporting personnel, offices, and divisions, FMCSA is finding that some responsive records are inadvertently being reported more than once.  FMCSA is also receiving some records that are outside the scope of the now-narrowed FOIA.  I believe the final count of responsive pages will be approximately 250,000.

4.  In my declaration dated June 14, 2007, I stated the average processing time for complex FOIAs received by FMCSA is averaging 25 business days in 2007, which is a decrease from the previous average of 35 business days.  This 25-day average is in part due to the average FMCSA complex FOIA only requiring a search of a few FMCSA systems and/or offices and only resulting in a few dozen to a few hundred responsive pages.  Most do not require legal review.   Since my arrival in the FMCSA FOIA Office in October, 2002, only one other FOIA has ever required contractor support specifically for that FOIA.  The

FOIA at issue in this suit significantly deviates from the average complex FOIA my office receives. Since my arrival in the FMCSA FOIA Office, Plaintiff's FOIA – even in its narrowed form - is the largest, most extensive FOIA request FMCSA has received.

5. Based upon my knowledge of the size of Plaintiff's FOIA, the diversity of its responsive records, the processing necessary, and the logistics involved, I estimate another twelve (12) months is needed to completely process Plaintiff's FOIA.

6. I understand Plaintiff opposes the Government's stay motion before the court. I understand they contest it in part because they dispute FMCSA's assertion that FMCSA is making progress in reducing its backlog of FOIA cases. In my third declaration dated June 14, 2007, I addressed FMCSA's progress in reducing its FOIA backlog. I supplement my third declaration by adding that for Fiscal Year 2004, FMCSA had 869 FOIAs to process (105 carried over from FY 2003, 764 received during FY04). FMCSA processed 778 and ended Fiscal Year 2004 with 91 FOIAs pending. This gives a backlog percentage for Fiscal Year 2004 of 10.5 percent.

Executed on: _6/28/07_

TIFFANIE C. COLEMAN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY | ) ) ) ) |
| Plaintiff, | ) Civil Action No.: 07-00467 (RWR) |
| v. | ) ) ) |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION | ) ) ) ) |
| Defendant. | ) ) |

**DECLARATION OF TIFFANIE C. COLEMAN**

1. I continue to serve as the Freedom of Information Act (FOIA) Officer for the Federal Motor Carrier Safety Administration (FMCSA), an operating administration within the U.S. Department of Transportation.  I adopt and re-affirm paragraphs 1 and 2 of my earlier declaration to the court dated April 11, 2007.

2. The below table provides statistics on FMCSA FOIAs received and processed in the previous two fiscal years, and provides statistics on FOIAs pending in FMCSA at the end of the previous three fiscal years.  I compiled this table from the U.S. Department of

Transportation's annual FOIA reports to Congress[1].

|  | Number of FOIA Requests Pending as of End of FY2004 | Number of FOIA Requests Received During FY2005 | Number of FOIA Requests Processed During FY2005 | Number of FOIA Requests Pending as of End of FY2005 | Number of FOIA Requests Received During FY2006 | Number of FOIA Requests Processed During FY2006 | Number of FOIA Requests Pending as of End of FY2006 |
|---|---|---|---|---|---|---|---|
| FMCSA | 91 | 829 | 823 | 97 | 1,041 | 990 | 148 |

3. The above table shows that while the backlog of pending FMCSA FOIAs increased slightly for Fiscal Year 2006 (13% of total FOIAs in FY2006, versus 10% of total FOIAs in FY2005), the number of FOIAs received in Fiscal Year 2006 increased substantially (approximately 25% more than received in Fiscal Year 2005). In addition to the substantial increase in FOIAs received being a factor in the number of FOIAs pending as of the end of Fiscal Year 2006, a reduction of FOIA processing man-hours in Fiscal Year 2006 was also a factor. In Fiscal Year 2006, both I and another Federal employee FOIA analyst were assigned additional FMCSA tasks. These additional tasks are unrelated to our FOIA function. We received these additional tasks due to FMCSA staffing losses in other related FMCSA offices. The oldest FOIA pending in FMCSA was received in early 2006.

4. While I project the overall number of FOIAs served upon FMCSA will increase again for Fiscal Year 2007 (see paragraph 4 of my previous declaration dated May 23, 2007), I also expect a lower percentage of FOIAs pending as of Fiscal Year's end. In February, 2007, I adopted the two-track, simple/complex FOIA processing system. I described this FOIA processing system in paragraph 4 of my declaration dated April 11, 2007. Also as

---

[1] http://www.dot.gov/foia/reports/2005annualreport.htm; http://www.dot.gov/foia/reports/2006annualreport.htm

of February, 2007, newly received "simple" FOIAs are immediately processed. I defined "simple" FOIAs in my previous declaration dated May 23, 2007. With the exception of the month of May[2], this new processing plan reduced FMCSA simple FOIA processing times from approximately 35 business days to 20 business days. This new processing plan has also reduced FMCSA complex FOIA processing times, from approximately 35 to 25 business days. Both our federal and contract staff are continuing to work overtime hours to reduce the backlog again. Overall, the implementation of the "two track" system has proven to be effective.

5.  FMCSA is also part of the U.S. Department of Transportation FOIA Action Improvement plan.[3]

6.  I have been informed the Plaintiff, in a filing to the court dated June 4, 2007, narrowed the scope of its FOIA. This narrowing was not separately communicated to my office. My letter to the Plaintiff dated April 30, 2007 (see Exhibit B, May 23, 2007 Declaration), and sent to the Plaintiff via facsimile and via regular mail that same date, has yet to be answered. In that letter, I invited the Plaintiff to narrow the scope of its FOIA, as a more narrow-in-scope FOIA would likely expedite FMCSA processing.   FMCSA standard procedure is to have the FOIA requester communicate any narrowing of his/her FOIA directly to the FMCSA FOIA Office.

Executed on: JUN 1 4 2007 _____

TIFFANIE C. COLEMAN

---

[2] In May, 2007, FMCSA FOIA processing was uniquely disrupted due to having to move the FMCSA FOIA Office into the new U.S. DOT building in Washington, D.C.

[3] http://www.dot.gov/foia/actionimprovementplan2006.pdf

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ADVOCATES FOR HIGHWAY AND ) 
AUTO SAFETY )
           )
             Plaintiff, ) Civil Action No.: 07-00467 (RWR)
           )
        v. )
           )
FEDERAL MOTOR CARRIER )
SAFETY ADMINISTRATION )
           )
           )
           Defendant. )
_____ )

## DECLARATION OF ROBIN M. MERIWEATHER

I, Robin M. Meriweather, declare as follows:

1.      I am an Assistant United States Attorney in the United States Attorney's

Office for the District of Columbia. I represent Defendant Federal Motor Carrier Safety

Administration ("FMCSA") in the above-captioned case.

2.      On April 9, 2007, I spoke to Adina Rosenbaum, counsel for Plaintiff

Advocates for Highway and Auto Safety ("AHAS"), concerning the scope of the AHAS

FOIA request at issue in this litigation. I recall the details of that conversation, and have

consulted my contemporaneous notes of that conversation to confirm the accuracy of my

recollection.

3.      During that April 9, 2007 conversation, I asked Ms. Rosenbaum whether

AHAS was willing to narrow its FOIA request, and whether there was a subset of

documents that AHAS was most interested in. Ms. Rosenbaum informed me that she

would consult with her client and get back to me. However, she indicated that she

suspected AHAS wanted all the documents it had requested, and would be equally interested in all of them.

4.    Ms. Rosenbaum and I spoke again on or about April 9, 2007.  She informed me that AHAS was not willing to narrow its FOIA request.  With regards to my inquiry into whether there were any documents that AHAS desired more than others, Ms. Rosenbaum informed me that AHAS was most interested in records dated on or after June 7, 2004.  However, she reiterated that AHAS still wanted all the documents, and was not narrowing its FOIA request.  I informed Ms. Rosenbaum that this information might help AHAS order its processing of the records responsive to the request.

5.    I have read the Declaration of Adina Rosenbaum submitted as Exhibit 3 to Docket Entry 8 in this action.  That declaration is inconsistent with my recollection of the April 9, 2007 conversation in one significant respect.  Specifically, that declaration states that Ms. Rosenbaum informed me that "after it received records dated after June 7, 2004, Advocates might be willing to narrow its request." Dkt. Entry 8-3 ¶ 2.  Nothing that I heard indicated that AHAS might narrow its request in the future.  Instead, I believed it was unlikely that AHAS would ever narrow its request.  To the extent Ms. Rosenbaum said anything that suggested that AHAS might narrow its request on a future date, it was inaudible or said after I hung up the phone.  As stated above, I took notes during that conversation.  Those notes indicate that AHAS was "not narrowing [its] request and want[ed] everything."

6.    Ms. Rosenbaum did not contact me again to modify her prior statements concerning the narrowing of the AHAS FOIA request.  I first learned that AHAS might be willing to narrow its request — and that AHAS claimed to have informed me that it

might narrow its request in the future — on June 5, 2007, when I read the opposition brief submitted as Docket Entry 8 in this action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 27, 2007

_____

Robin M. Meriweather

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADVOCATES FOR HIGHWAY AND AUTO SAFETY<br><br>       Plaintiff,<br><br>       v.<br><br>FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION<br><br>       Defendant. | Civil Action No.: 07-00467 (RWR) |

**ORDER**

       Upon consideration of Defendant's Motion for a Stay of Proceedings, it is, this _____ day of _____, 2007,

       ORDERED that Defendant's Motion for a Stay of Proceedings be and hereby is GRANTED;

       it is further ORDERED that the proceedings shall be stayed for a period of one year.

       SO ORDERED.


_____
United States District Judge